IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SUN JIN JIANG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-450 (LMB/WBP) |
| | ) | |
| TODD M. LYONS, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Petitioner Sun Jin Jiang ("Jin Jiang"), a native and citizen of the China, has filed a three-count Amended Petition for Writ of Habeas Corpus ("Amended Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since January 28, 2026. Specifically, he alleges that ICE's revocation of the Order of Supervision that released him from custody pending his removal from the United States violated 8 C.F.R. § 241.4(*l*) (Counts I and III) and his procedural due process rights (Count II).

Jin Jiang is currently detained at the Caroline Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Center. Jin Jiang has also sued Todd M. Lyons, the Acting Director of ICE; Joseph Simon, the Director of the Washington Field Office of ICE's Enforcement and Removal Operations; Markwayne Mullin, the DHS Secretary[1]; Pamela Bondi, the Attorney General; and the Department of Homeland Security (collectively, "the federal respondents"). For the reasons

---

[1] Although the Amended Petition originally named Kristi Noem as the DHS Secretary, Markwayne Mullin has been substituted as her successor pursuant to Federal Rule of Civil Procedure 25(d).

discussed in this Order, the Court finds that Jin Jiang has been detained in violation of 8 C.F.R. § 241.4(l)(2) and his due process rights. Accordingly, his Amended Petition will be granted, and the federal respondents will be ordered to release Jin Jiang from custody immediately.

## I.

The following facts are undisputed. Jin Jiang is a 51-year-old native and citizen of China and has been in this country since at least 1993. [Dkt. No. 12-1] at ¶ 5. Based on evidence submitted to the immigration court in 2012, Jin Jiang, who is Christian, fled China after his family home was destroyed due to his family's religious beliefs. [Dkt. No. 4-3] at 18. He has a daughter who was born in Charlottesville, Virginia in 2010, and at least as of 2012, Jin Jiang operated a Chinese food restaurant with his partner in Poquoson, Virginia. Id. at 17.

On June 7, 1993, Jin Jiang applied for legal status in the United States. [Dkt. No. 12-1] at ¶ 6. He did not have a valid visa or entry document but expressed a desire to apply for asylum. Id. That same day, Jin Jiang was issued a document that charged him with being excludable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and § 1182(s)(7)(B)(i)(I). Id. ¶ 7. On August 27, 1993, Jin Jiang appeared with counsel and a court-appointed Chinese language interpreter for a hearing before the immigration court. [Dkt. No. 4-4] at 2. During the hearing, Jin Jiang conceded that he was inadmissible to the United States and requested asylum and withholding of deportation. Id. The Immigration Judge gave Jin Jiang until September 21, 1993 to file an asylum application, scheduled an asylum hearing for May 11, 1994, and provided Jin Jiang "written and oral notice in a language he understood of his next hearing date." Id.

Although Jin Jiang filed a timely asylum application on August 31, 1993, he failed to appear at the May 11, 1994 hearing. Id. Jin Jiang's "counsel personally appeared and informed the court that [Jin Jiang] failed to remain in contact with counsel's office." Id. at 3.

2

Accordingly, by an order dated May 12, 1994, the Immigration Judge sustained the charges and ordered Jin Jiang excluded from the United States in absentia. [Dkt. No. 4-2] at 2.

On September 17, 2012, ICE agents encountered Jin Jiang in or around Richmond, Virginia. [Dkt. No. 12-1] at ¶ 9. On October 26, 2012, Jin Jiang, through counsel, filed a motion to reopen his exclusion proceedings, [Dkt. No. 4-3], which the Immigration Judge denied on December 3, 2012, [Dkt. No. 4-4]. Specifically, the Immigration Judge found that the motion was "fatally deficient" because it did not "contain an affidavit by [Jin Jiang] regarding his claim that he did not receive notice" of the May 11, 1994 hearing date. Id. at 3. The Immigration Judge also observed that the motion was untimely because it was brought approximately 19 years after the immigration court ordered Jin Jiang excluded from the United States in absentia. Id. In spite of the Immigration Judge's findings, on December 4, 2012, Jin Jiang was released from ICE custody on an Order of Supervision. [Dkt. No. 4-5] at 1. There is no evidence in the record before this Court that Jin Jiang has any criminal history or has ever violated any condition of the Order of Supervision.

On January 28, 2026, Jin Jiang was arrested, and ICE issued to him a Notice of Revocation of Release ("Notice") stating: "Your release on the order of supervision issued to you on or about December 4, 2012, is hereby revoked. You will remain detained in U.S. Immigration and Customs Enforcement custody at this time." [Dkt. No. 4-5] at 1. The Notice indicated that Jin Jiang's "release has been revoked pursuant to 8 C.F.R. § 241.4(*l*)" because "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." Id. Specifically, the Notice stated that "ICE is seeking a travel document to effect your expeditious removal to People's Republic of China." Id. The document was signed by Robert Guadian, the Field Office Director of ICE's Washington Field Office. Id. at 2.

3

On February 5, 2025, DHS submitted to the Chinese Embassy a request for travel documents to facilitate Jin Jiang's removal. [Dkt. No. 12-1] at ¶ 13. According to Supervisory Detention and Deportation Officer Justin Richardson, whose declaration is attached to the federal respondents' opposition, DHS believes that there is a significant likelihood that the agency will be able to remove Jin Jiang in the foreseeable future:

> At this time, DHS is waiting for the [People's Republic of China ("PRC")] to confirm Petitioner's identity and nationality and issue travel documents. It is currently taking up to four to five months to obtain nationality verification and issue documents from the PRC. Once nationality is confirmed, travel documents are usually issued within two to three weeks. The PRC is issuing travel documents for both commercial and charter removals. DHS regularly schedules charters to the PRC for removal and commercial flight removals can be scheduled as little as 10 days from the issuance of a travel document. So far in 2026, DHS has removed over 1,700 individuals to the PRC.

Id. ¶¶ 14–15. On March 18, 2026, Jin Jiang filed an Amended Petition for Writ of Habeas Corpus, [Dkt. No. 10], which has been fully briefed.

II.

To assess the validity of Jin Jiang's detention, the Court must determine whether ICE followed its regulations in revoking Jin Jiang's Order of Supervision. Based on the record before the Court, the federal respondents failed to comply with 8 C.F.R. § 241.4(*l*)(2) because there is no evidence that the ICE official who signed Jin Jiang's Notice of Revocation of Release made the findings required by the applicable regulation.

8 C.F.R. § 241.4(*l*)(2) specifies which ICE officials may revoke an order of supervision and when that revocation may occur.[2] First, "[t]he Executive Associate Commissioner shall have the authority, in the exercise of discretion, to revoke and return to [Immigration and Naturalization] Service custody an alien previously approved for release." 8 C.F.R.

---

[2] 8 C.F.R. § 241.4(*l*)(1) is inapplicable because there is no evidence in the record before the Court indicating that Jin Jiang has violated any condition of the Order of Supervision.

4

§ 241.4(*l*)(2). Second, "[a] district director may also revoke release when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." Id.

Here, the Notice of Revocation of Release, which revoked Jin Jiang's Order of Supervision, was signed by Field Office Director Robert Guadian, who claimed that ICE is actively seeking travel documents to facilitate Jin Jiang's removal to China. [Dkt. No. 4-5] at 1–2. As an initial matter, "[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position titles, whether an ICE field office director has authority to revoke an alien."[3] Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017). Although 8 C.F.R. § 241.4(*l*)(2) authorizes "district director[s]" to revoke orders of supervision, "ICE's regulations are somewhat contradictory as to whether Field Office Directors and District Directors have the same responsibilities and authority." Ndoye v. Joyce, No. 1:26-cv-1219, 2026 WL 765635, at *3 (S.D.N.Y. Mar. 17, 2026); see Umanzor-Chavez v. Noem, No. 8:25-cv-1634, 2025 WL 2467640, at *5 (D. Md. Aug. 27, 2025) (stating that although a district director may revoke release, "it is not clear whether an ICE field office director . . . has that same authority"). On the one hand, 8 C.F.R. § 1.2 defines the term "district director" as any "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge" "to the extent that authority has been delegated to such official." This definition supports the conclusion that 8 C.F.R. § 241.4(*l*)(2) authorizes field office directors to revoke orders of supervision. On the

---

[3] For decades, immigration proceedings fell within the purview of the Immigration and Naturalization Service; however, in 2002, in the wake of the September 11 terrorist attacks, Congress passed the Homeland Security Act, which transferred authority to commence removal proceedings from the Immigration and Naturalization Service to the Department of Homeland Security. Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025).

other hand, 8 C.F.R. § 287.5(e) "supports a conclusion that District Directors and Field Office Directors are separate entities." Ndoye, 2026 WL 765635, at *4. Section 287.5(e)(2), which identifies the immigration officials authorized to issue arrest warrants for immigration violations, lists "[d]istrict directors" separate and apart from "Field Office Directors." 8 C.F.R. § 287.5(e)(2)(i), 287.5(e)(2)(xxxix), suggesting that the two positions are distinct. Despite this contradiction, some courts have stated at least in dicta that field office directors may revoke orders of supervision. See Santamaria Orellana v. Baker, No. 1:25-cv-1788, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025); Gazazyan v. Bondi, No. 5:25-cv-2599, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025).

Assuming arguendo that a field office director qualifies as a "district director" and thus has the authority to revoke release, the field office director must make the threshold determinations required by 8 C.F.R. § 241.4(l)(2) before revoking a noncitizen's order of supervision. Specifically, the field office director must determine that (1) "revocation is in the public interest" and (2) the "circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."[4] 8 C.F.R. § 241.4(l)(2). These findings must be made before a noncitizen is detained, Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025), and any post-hoc rationalization ICE may provide to correct the unlawful agency action would be ineffective because a post-hoc rationalization "cannot serve as a sufficient predicate for agency action," Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 539 (1981).

There is absolutely no evidence in the record indicating that Field Office Director Robert Guadian made a finding before detaining Jin Jiang that the revocation of Jin Jiang's Order of Supervision served the public interest or that the circumstances did not permit referral to a more

---

[4] The term "Executive Associate Commissioner" likely refers to an ICE Executive Associate Director. Santamaria Orellana, 2025 WL 2841886, at *4.

senior ICE officer. The Notice of Revocation of Release merely states that Jin Jiang's Order of Supervision was being revoked "to enforce the removal order entered" against him. [Dkt. No. 4-5] at 1. The Notice does not contain any analysis as to whether Jin Jiang's detention serves any public interest or whether the Field Office Director considered consulting with a more senior ICE official in deciding to revoke the Order of Supervision. Indeed, it strains credulity to suggest that there is a legitimate public interest in detaining an individual who, on the record before the Court, has no criminal record, has been living in the United States without incident for at least 33 years, and has a minor U.S. citizen child. And the federal respondents have utterly failed to explain "why it is all of a sudden in the 'public interest' to effectuate [Jin Jiang's] removal, when the Government has failed to act on his final order of removal for over twenty years." Martinez v. Jamison, No. 2:26-cv-718, 2026 WL 700335, at *5 n.6 (E.D. Pa. Mar. 12, 2026).

The requirements set forth in 8 C.F.R. § 241.4(*l*)(2) are not merely "housekeeping requirement[s]." Santamaria Orellana, 2025 WL 2841886, at *5. Rather, they constitute "important procedural safeguard[s]" with which the federal respondents must comply before subjecting an individual to a period of detention that is expected to last, at the very least, several months. Id.; see [Dkt. No. 12-1] at ¶ 14 ("It is currently taking up to four or five months to obtain nationality verification and travel documents from [China]."). Put differently, despite the federal respondents' suggestion that the decision to revoke an order of supervision "is within the sole discretion of the district director," [Dkt. No. 12] at 5 (emphasis in original), ICE officials do not have discretion to decide whether to comply with DHS's regulations. See Kale v. Alfonso-Royals, 139 F.4th 329, 336 n.3 (4th Cir. 2025) ("[A]n agency lacks discretion to disobey regulations."). Simply put, ICE has blatantly "disregarded the explicit text of its own regulation and violated Petitioner's due process rights." Ndoye, 2026 WL 765635, at *4; see Santamaria Orellana, 2025 WL 2841886, at *4 (stating that "violations of the requirements of 8 C.F.R.

7

§ 241.4 . . . implicate due process).  Therefore, the federal respondents will be ordered to release Jin Jiang from custody immediately.[5]

III.

For all these reasons, the Amended Petition, [Dkt. No. 10], is GRANTED, and it is hereby

ORDERED that the federal respondents release Jin Jiang from custody with all his personal property subject to the conditions of his preexisting Order of Supervision no later than 12:00 noon on Wednesday, April 1, 2026.  The federal respondents may not impose any new or additional conditions on Jin Jiang's release, other than those previously imposed upon him, without leave of court; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Jin Jiang unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of his Order of Supervision; or (3) his Order of Supervision has been lawfully revoked in a manner consistent with 8 C.F.R. § 241.4 (*l*)(2) and the Due Process Clause.

The Clerk is directed to enter judgment in Jin Jiang's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 31st day of March, 2026.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[5] Several federal courts have reached the same conclusion.  See, e.g., Benitez Pineda v. Noem, et al., 1:25-cv-2337, Dkt. No. 17, at 9 (E.D. Va. Mar. 2, 2026); Ceesay, 781 F. Supp. 3d at 162; Rombot, 296 F. Supp. 3d at 387–89; Ndoye, 2026 WL 765635, at *4; Zhang v. Genalo, 1:25-cv-6781, 2025 WL 3733542, at *9 (E.D.N.Y. Dec. 28, 2025); Villanueva v. Tate, 801 F. Supp. 3d 689, 699–700 (S.D. Tex. 2025).

8